## In re The DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.

### M.D.L. No. 378.

United States District Court,
D. Kansas.

May 8, 1985.

Joseph W. Kennedy, Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., for plaintiffs.

Larry P. Ellsworth, Marcia Sowles, Eric Schwartz, Dept. of Energy, Washington, D.C., for Dept. of Energy.

Robert Martin, Paul B. Swartz, Martin W. Bauer, Martin, Pringle, Oliver, Triplett & Wallace, Wichita, Kan., for Total Petroleum, Inc.

John P. Mathis, Catherine C. Wakelyn, Baker & Botts, Washington, D.C., for Tenneco Oil Co. and Pennzoil Co.

Kenneth L. Bachman, Jr., Eugene M. Goott, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., for Tosco Corp.

Thomas A. Donovan, Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, Pa., for Ashland Oil, Inc.

Richard P. Noland, Robert R. Morrow, Monica A. Otte, Sutherland, Asbill & Brennan, Washington, D.C., for Texas City Refining, Inc.

Brian G. Grace, Curfman, Harris, Stallings, Grace & Snow, Wichita, Kan., for all indicated refiners.

Joseph C. Bell, Hogan & Hartson, Washington, D.C., for American Petroleum Refiners Ass'n.

Robert M. Westberg, Robert B. Gex, Dudley A. Zinke, Ira J. Rappeport, Pillsbury, Madison & Sutro, San Francisco, Cal., Thomas D. Kitch, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for Chevron U.S.A., Inc.

James P. Zakoura, Weeks, Thomas & Lysaught, Chtd., Kansas City, Kan., Robert L. Gowdy, Kansas City, Mo., for Farmland Industries, Inc.

Gilliland, Hayes, Dillon & Green, P.A., Hutchinson, Kan., William G. Riddoch, Houston, Tex., for Shell Oil Co.

James F. Flug, Lobel, Novins & Lamot, Washington, D.C., for Alabama, California, Connecticut, Idaho, Illinois, Indiana, Maryland, Michigan, Mississippi, Montana, Ohio, South Dakota, Vermont, Wisconsin and Wyoming.

Andrew Miller, Arthur J. Galligan, Dickstein, Shapiro & Morin, Washington, D.C., for Arkansas, Kansas, Delaware, Iowa, North Dakota, Rhode Island, Texas and West Virginia.

Jerry S. Cohen, Michael D. Hausfeld, Patricia F. Bak, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., for Payne 22, Inc., Anthony Monaco, Rex Chipley, Robert Sharo, George Theodore, Harvey Hatfield, Richard Vielhaber and Nicholas Peto.

Wilbur Bell, Executive Director, Mississippi Dept. of Energy & Transp., Jackson, Miss., for State of Miss.

Mike Greely, Atty. Gen., Jerome J. Cate, Asst. Atty. Gen., State of Mont., Helena, Mont., for State of Mont.

Wayne E. Hundley, Deputy Atty. Gen., Topeka, Kan., for the following states and territories: Michigan, Alabama, California, Arkansas, Kansas, Delaware, Iowa, North Dakota, Rhode Island, Texas, Virginia, Pennsylvania, Minnesota, Colorado, North Carolina, Illinois, Ohio, South Dakota, Wisconsin, Oregon, Maryland, New Jersey, Tennessee, Nevada, Hawaii, New Mexico, Puerto Rico, Guam, Virgin Islands, District of Columbia, West Virginia, New York and South Carolina.

Paul L. Douglas, Atty. Gen., Frank J. Hutfless, Asst. Atty. Gen., Lincoln, Neb., for State of Neb.

John J. Easton, Jr., Atty. Gen., J. Wallace Malley, Jr., Jane Hart Marter, Asst. Attys. Gen., State of Vt., Montpelier, Vt., for State of Vt.

Michael J. Bowers, Atty. Gen., Robert S. Stubbs, Exec. Asst. Atty. Gen., H. Perry Michael, First Asst. Atty. Gen., Robert S. Bomar, Sr. Asst. Atty. Gen., Isaac Byrd, Asst. Atty. Gen., State of Ga., Atlanta, Ga., for State of Ga.

T. Travis Medlock, Atty. Gen., Richard P. Wilson, Asst. Atty. Gen., State of S.C., Columbia, S.C., for State of S.C.

Francis X. Bellotti, Atty. Gen., Alan L. Kovacs, Dennis M. Ryan, Asst. Attys. Gen., Antitrust Div., Public Protection Bureau, Boston, Mass., for Com. of Mass.

Joseph I. Lieberman, Atty. Gen., Richard Webb, Asst. Atty. Gen., Hartford, Conn., for State of Conn.

Gregory H. Smith, Atty. Gen., Bruce E. Mohl, Asst. Atty. Gen., Concord, N.H., for State of N.H.

James E. Tierney, Atty. Gen., Robert Frank, August, Me., for State of Me.

Will Larson, Garrett & Roberts, Chtd., Topeka, Kan., John Van de Kamp, Atty. Gen., Yeoryios Apallas, Deputy Atty. Gen., San Francisco, Cal., Douglas B. Mitchell, Passman, Mitchell & Alfano, Washington, D.C., for Jobbers' Group and Nat. Oil Jobbers Counsel.

Jack Focht, Patricia M. Dengler, Smith, Shay, Farmer & Wetta, Wichita, Kan., Richard T. Williams, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., for Air Transport Ass'n of America.

Bernard Nash, Edward G. Modell, Washington, D.C., for Pennsylvania, Hawaii, Nevada, North Carolina, Guam and the Virgin Islands.

Robert W. Wise, Bremyer & Wise, P.A., McPherson, Kan., for Virginia Elec. and Power Co.

Stewart Stone, Jr., Brobeck, Phlager & Harrison, San Francisco, Cal., for Union Oil Co. of California.

Darci L. Rock, Mary Caroline Parker, Bracewell & Patterson, Washington, D.C., for Phillips Petroleum Co.

Alexander B. Mitchell, Sargent, Klenda, Haag & Mitchell, Wichita, Kan., for all intervenor purchasers.

Harold E. Kohn, Joseph C. Kohn, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for intervenor Philadelphia Elec. Co.

Philip P. Kalodner, Philadelphia, Pa., for intervenors Nat. Freight, Inc., RJG Cab, Inc., and Geraldine H. Sweeney.

Donald W. Bostwick, Adams, Jones, Robinson & Malone, Chtd., Wichita, Kan., for plaintiff Amoco Production Company.

### OPINION AND ORDER

THEIS, Senior District Judge.

This multidistrict litigation involves the issue of how nearly a billion dollars in crude oil overcharges currently held in escrow should ultimately be distributed. On September 13, 1983, this Court as delegate of the Judicial Panel on Multidistrict Litigation referred the question of the appropriate remedy to the Office of Hearings and Appeals [OHA] of the Department of Energy [DOE] for determination of whether the actual impact of these overcharges could be accurately traced. *In re: The Department of Energy Stripper Well Exemption Litigation,* 578 F.Supp. 586 (D.Kan.1983) (hereinafter "Stripper Wells"). Since that time, the OHA has held hearings concerning tracing the impact of the overcharges. The DOE report which was to have been made by September 13, 1984, *see Stripper Wells,* 578 F.Supp., at 597, has yet to be issued. The case is currently before the Court on a motion by the Petroleum Marketers Association of America and the Jobbers' Group [Movants] to expedite the issuance of the OHA report and to require the report to be issued in an unexpurgated form, without any modifications in the report by the DOE. This motion has been joined by the Philadelphia Electric Company, National Freight, Inc., RJG Cab Inc., and Geraldine Sweeney [End Users]. The Court has considered the briefs submitted and is now prepared to rule.

■ The Court finds that it is unnecessary to establish an immediate deadline for the issuance of the OHA report at this time. The Court shares the concern of the Movants and End Users over the delay in the issuance of the OHA report. However, as the Court recognized at the time it initially referred this matter to the OHA, "these matters are complex and ... considerable time may well be needed for the OHA to complete its assigned task." *Stripper Wells,* 578 F.Supp., at 597. The Court is cognizant of the fact that, in matters as complex as this, speed and thorough analysis may be conflicting interests. In weighing these interests, the Court does not find that the OHA's delay in issuing their report originally due in September of 1984 has reached the point of unreasonableness.

The fact that the delay is not yet unreasonable does not mean, however, that the Court sanctions an open-ended timetable for the issuance of the OHA's report. The reason the Court initially required reports by the OHA on its progress in March and

September of 1984 was to prevent this matter from being swept up into a bureaucratic vortex of endless hearings and discussions, never to be seen again. *See Stripper Wells*, 578 F.Supp., at 596. While the Court does not believe that this is the situation currently, the Court has no intention of allowing this case to disappear from sight.

The director of the OHA has stated that he expects the OHA report to be issued sometime "this spring." Transcript of Hearings Before the Subcomm. on Interior and Related Agencies of House Comm. on Appropriations, 99th Cong., 1st Sess. 80 (March 18, 1985). The Court assumes that when the director chose the words "this spring," he did not do so imprudently but instead meant exactly what he said. Spring in 1985 extends from March 20th until June 21st. *See The World Almanac & Book of Facts 1985*, 732 (1984) (Newspaper Enterprise A., Inc. publisher). The Court, therefore, expects the OHA report to be issued on or before June 21, 1985. If the report cannot be issued by that date, the OHA should so notify the Court, explaining why the report cannot be issued by that date and specifying a date certain upon which the report will be issued.

Furthermore, so that the Court can ensure that any further OHA action proceeds in a timely fashion, the OHA shall, when it issues its report, also issue a tentative schedule of any further hearings or reports that the OHA feels will be necessary to carry out its assigned task. The Court does not intend to lock the OHA into a rigid timetable. Any schedule would, of course, have to be flexible to allow for future contingencies. However, a tentative schedule by the OHA would enable the Court and parties to anticipate with some degree of certainty future OHA action and confirm that this matter of substantial importance is progressing satisfactorily. The OHA should be able to fashion a fairly realistic timetable based on its experience accumulated so far in this litigation. Such a timetable should also make unnecessary motions like the recently-filed and withdrawn motion to stay issuance of the report and the instant motion to expedite.

■ The second matter raised by the instant motion is the request that the OHA report be issued in an unexpurgated form, without any changes or editing by the DOE. This motion arises out of a concern that the DOE will manipulate the OHA report so as to indicate that no portion of the overcharge impact can be accurately traced. The DOE will then, it is feared, use this altered OHA report to argue that the escrow funds should be deposited with the U.S. Treasury on behalf of the public at large. This fear is not new. Similar concerns of possible DOE bias were expressed at the time this case was referred to the OHA and DOE for fact-finding. *See Stripper Wells*, 578 F.Supp., at 596.

The DOE has taken the position that the DOE is entitled to review the OHA report in its entirety in accord with DOE regulations in order to "assure that the proposed OHA action is legally defensible, avoid inadvertent discrepancies in the position the DOE takes on such matters and assure consistency in the implementation of departmental policy." Brief of DOE in Opposition to Motion to Expedite, Dk. No. 629, p. 2.

This dispute arose out of an apparent confusion over the precise effect of the Court's remand of this case to the DOE. The Court's order of remand essentially required the OHA and DOE to provide the Court with information on three areas: a finding of fact on the technical issue of tracing the total or partial impact of the overcharges in this case if possible, an opinion as to whether intelligible progress can be made on this issue, and, if so, a recommendation as to how best to achieve restitution in this case. *See Stripper Wells*, 578 F.Supp., at 596–97.

As to the last two of these items, it is clear that consultation by the OHA with senior policy makers of the DOE would be appropriate. Both of these areas require interpretations of the progress and results of the OHA's fact-finding mission. These areas involve policy decisions in which the experience and expertise of the DOE would be helpful. The OHA and DOE must con-

sult on these matters to determine the position which the DOE may be required to defend and advocate before this Court.

The specific .fact-finding mission assigned to the OHA is significantly different from these areas, however, The determination of whether the impact of the overcharges in this case can be accurately traced to specific individuals does not involve policy decisions. It is a determination of fact, albeit a highly complex and technical determination, but a determination of fact nonetheless. While the *interpretation* of the facts may be reviewed to assure consistency with the DOE's departmental policy and litigation position, the initial *determination* of those facts requires no such DOE review.

The DOE asserts that "[t]here is no reason why OHA's report in this proceeding should not receive the same intra-agency review as all Subpart V reports." Brief of DOE in Opposition to Motion to Expedite, Dk. No. 629, p. 2. This argument highlights a misconception of the nature of this Court's referral of the case to the DOE. In Subpart V reports, the DOE and OHA are actually distributing the refunds to persons and entities found by the OHA to have suffered injury by violations of DOE regulations. 10 C.F.R. § 205.280 (1984). In such cases, the OHA's primary responsibility is tracing and identifying the specific injuries caused by the violations. *See* 10 C.F.R. § 205.281(a) and (b). After the injury has been traced to specific parties, they are compensated for their injuries by the OHA as fairly and equitably as practical. 10 C.F.R. § 205.282(e). However, the OHA may decide to make refunds on a pro rata basis if the amount of approved claims exceed the amount the DOE has determined should be remitted, 10 C.F.R. § 205.-286(a), or entirely refuse to consider a claim application deemed too small to warrant consideration, 10 C.F.R. § 205.286(b). Furthermore, refunds may not be paid out to injured parties absent written order of the OHA. 10 C.F.R. § 205.287(d). Many of these determinations, such as what claim amount is "too small," require policy decisions that the DOE may properly review to ensure that the decision is defensible and

consistent with departmental policy. On the other hand, the determination of what parties were injured in what amounts involves no policy considerations but is only a determination of fact.

This Court referred this litigation to the OHA only to take advantage of the procedures and expertise which the OHA had developed in tracing the impact of overcharges in the oil industry. This litigation was referred to the OHA for its determination of which parties had suffered injury in what amounts. That determination is solely a question of fact. The Court did not intend to allow the DOE to make the policy decisions on whether such an attempt at tracing is feasible or how to actually make restitution, although the Court is interested in the DOE's position on these matters. The fact-finding mission of the OHA in this case does not require DOE review to assure that the OHA position is defensible or consistent with the DOE position on such matters. The Court expressly reserved to itself the judicial determination of how to best make restitution from the escrow fund. The fact-findings of the OHA as to what portion, if any, of the impact of the overcharges in this case have been traced to the refinery level should not be edited or altered by the DOE. However, the DOE is free to review the OHA's fact-findings in order to develop the DOE's position on whether further efforts by the OHA would be useful and on what procedure would best achieve restitution in this case. These matters should be addressed in a separate report from that containing the OHA's findings of fact. This should avoid time-consuming arguments concerning the integrity of the OHA's findings of fact. The request by the End Users that the Court prohibit all *ex parte* communication between the OHA and DOE is needlessly artificial and unnecessary to protect the OHA's fact-findings from possible "contamination" by the DOE.

IT IS THEREFORE ORDERED that the OHA issue its findings of fact on the tracing and impact of the overcharges at issue in this case without editing or modification by the DOE. This shall not prevent the DOE from reviewing the OHA's fact-find-

ings in order to determine the DOE's position on the utility of further efforts by the OHA and a recommended plan of restitution which shall be issued separate from the report of the OHA's fact-findings.

IT IS FURTHER ORDERED that the motion to expedite issuance of the OHA's report is hereby denied at this time.

IT IS FURTHER ORDERED that along with its fact-finding report the OHA shall issue a tentative schedule of further hearings and report dates for any further investigation contemplated by the OHA to be necessary in order to fulfill its assigned task in this case.